# LEWERS AND COOKE, LIMITED, *v.* ATCHERLY.

## APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF HAWAII.

No. 69. Argued December 4, 1911.—Decided December 18, 1911.

Where one asks the aid of a court of chancery in executing a former
decree, he takes the risk of opening such decree for reëxamination.
*Lawrence Manufacturing Co.* v. *Janesville Cotton Mills*, 138 U. S. 532.

Of two former decrees adjudicating title to real estate, the Supreme
Court of Hawaii having found that the earlier was right and bound
all interests and that the later was wrong, this court affirms, seeing
no reason for not following the local court.

Great weight should be attributed to the decision of the court on the
spot, especially when ancient law is involved, such as existed in
Hawaii before the annexation.

This court sustains the rule laid down by the Supreme Court of Hawaii
that decisions of the Board of Land Commissioners of 1845 could not
be attacked except by direct appeal to the Supreme Court of Hawaii
as provided by law.

A decree establishing a will may determine who is entitled to testator's
property without determining that a particular property belonged
to the inheritance.

Where a case has not passed to a final decree one buying *pendente lite*
from a party thereto stands no better than the vendor. *Mellen* v.
*Moline Iron Works,* 131 U. S. 352.

18 Hawaii, 625; 19 Hawaii, 47, affirmed.

THE facts are stated in the opinion.

*Mr. David L. Withington,* with whom *Mr. William R.
Castle, Mr. W. A. Greenwell* and *Mr. Alfred L. Castle*
were on the brief, for appellant:

It was error to overrule the discretion of the Court of
Land Registration in declining to reopen the decree of 1858.

The court then had jurisdiction, the case was decided
on the merits, and, whether the decree was right or wrong,
the decision is now *stare decisis,* and property rights have
been built up on the faith of that decree. *Darling* v. *West-
moreland,* 52 N. H. 401. See also as to other matters in

discretion of the court, *Central Trust Co.* v. *Locomotive Works*, 135 U. S. 207; *Davis* v. *Braden*, 10 Pet. 286; *Early* v. *Rogers*, 16 How. 599; *Slicer* v. *Bank of Pittsburg*, 16 How. 571; *McAllister* v. *Kuhn*, 96 U. S. 87; *United States* v. *Estudillo*, 1 Wall. 710; *Rio Grande Irrigation and Colonization Co.* v. *Gildersleeve*, 174 U. S. 602.

No abuse of discretion on the part of the Land Court has been shown. Appellants have a legal title to the land, since it will be presumed that a deed has been executed, as adverse possession was found by the Land Registration Court, *Kaai* v. *Mahuka*, 5 Hawaii, 354; *Fauntleroy's Heirs* v. *Henderson*, 51 Kentucky, 447.

The equitable title is in appellant. Before the Mahele, land tenures were in one sense feudal, but by the Great Mahele the King surrendered the allodial ownership of the land, reserving certain portions to the crown, certain portions to the King personally, and certain portions for the public use. Commissioners were appointed, upon whom were conferred all private and public powers over property belonging to the King, who were only authorized to ascertain the claimant's kind and amount of title and to award for or against that title. *Thurston* v. *Bishop*, 7 Hawaii, 421; Art. IV, c. IV, Kamehameha III, 107.

At the time of making this award, April 10, 1849, the guardian had the absolute control and management of the ward's property, with the power to dispose of the same without the necessity of any order of court, and his failure to present a claim to the Commissioners was binding on the infant. *Kamehameha* v. *Kahookano*, 2 Hawaii, 118; *Laanui* v. *Puohu*, 2 Hawaii, 161.

Even had the guardian done his duty, the proceedings would have been the same, excepting that the award and the patent would have been issued to the guardian for the ward. *Kalakaua* v. *Keaweamahi*, 4 Hawaii, 577; *Lono* v. *Phillips*, 5 Hawaii, 357, 359; *Kaaihue* v. *Crabbe*, 3 Hawaii, 768; *Jones* v. *Meek*, 2 Hawaii, 9.

The Hawaiian court had jurisdiction in an action to reach property in a suit in equity. *Montgomery* v. *Coady,* 2 Hawaii, 322; *Davis* v. *Brewer,* 3 Hawaii, 270, and 3 Hawaii, 359; *Wei See* v. *Young Sheong,* 3 Hawaii, 489.

Equity will relieve against every species of fraud and so may set aside or annul decrees or judgments obtained through fraud. *Akeau* v. *Iakona,* 13 Hawaii, 216; *Norris* v. *Herblay,* 9 Hawaii, 514; *Mills* v. *Briggs,* 4 Hawaii, 506; and see *Hop* v. *Parke,* 6 Hawaii, 688; *Hackfield* v. *Bal,* 6 Hawaii, 364. See also *Perry* v. *Lucas,* 11 Hawaii, 350; *Kapea* v. *Moehonua,* 6 Hawaii, 49.

The minors having been represented at the probate of the will by their guardian *ad litem,* and having contested the probate, are bound by that judgment. *Keliipelapela* v. *Pamano,* 1 Hawaii, 503, 505.

Judge Allen was bound by the decision of Judge Robertson in probate, who held that Kalakaua was the equitable owner of the property and that Kinimaka was his guardian under the will of Kaniau.

The Hawaiian cases cited by the court are not in conflict with the holding of Chief Justice Allen and *Kukuahu* v. *Gill,* 1 Hawaii, 90.

The decisions of this court sustain Chief Justice Allen's jurisdiction.

Where one party has acquired the legal title to property to which another has the better right, a court of equity will convert him into a trustee of the true owner, and compel him to convey the legal title. *Johnson* v. *Towsley,* 13 Wall. 85; *Stark* v. *Starr,* 6 Wall. 419; *Bagnell* v. *Broderick,* 13 Pet. 436; *Patterson* v. *Winn,* 11 Wheat. 380; so where one an agent of another procures the patent to be issued to himself; *Ringo* v. *Binns,* 10 Pet. 269; and for cases where property has been adjudged to be held by the legal owner as trustee *ex maleficio* see, *Angle* v. *Chicago R. R. Co.,* 151 U. S. 1, 26; *Moore* v. *Crawford,* 130 U. S. 122; *White* v. *Cannon,* 6 Wall. 443; *Massie* v. *Watts,* 6

Cranch, 148; *Meader* v. *Norton,* 11 Wall. 442; *Felix* v. *Patrick,* 145 U. S. 317, 328; *Bernier* v. *Bernier,* 147 U. S. 242; *Bockfinger* v. *Foster,* 190 U. S. 116; *Johnson* v. *Waters,* 111 U. S. 640; *Widdicombe* v. *Childers,* 124 U. S. 400; *Sanford* v. *Sanford,* 139 U. S. 642. See also cases in regard to Californian and Mexican titles holding that the act in regard to private land claims includes perfect as well as inchoate or equitable titles, and that the only remedy is by appeal. *Botiller* v. *Dominguez,* 130 U. S. 238; *Ainsa* v. *New Mexico & Ariz. R. Co.,* 175 U. S. 76.

The act provides for a confirmation rather than a quitclaim. *Boquillas Land & Cattle Co.* v. *Curtis,* 213 U. S. 339; *Los Angeles F. & M. Co.* v. *Los Angeles,* 217 U. S. 226.

Trust relations respecting the property between the patentee and others may be enforced equally with such relations between him and others respecting any other property. *More* v. *Steinbach,* 127 U. S. 70.

There is nothing in the Hawaiian act which would justify any distinction between the principles laid down in these decisions and the principles to be applied to the case of 1858.

As there is neither Hawaiian statute nor judicial precedent in conflict, these cases are binding on the Hawaiian court.

The decree of Judge Roberston admitting the will of Kaniu to probate is a binding adjudication that Kalakaua was, after the death of Kaniu, beneficially entitled to the premises in question. *Keliipelapela* v. *Pamano,* 1 Hawaii, 503, 505.

The decree of November 2, 1858, is a conclusive adjudication between the parties, and is complete and final. *Kuala* v. *Kuapahi,* 15 Hawaii, 300; *McChesney* v. *Kona Sugar Co.,* 15 Hawaii, 710; *United States* v. *Morse,* 218 U. S. 493, 505; *Mellen* v. *Moline Malleable Iron Works,* 131 U. S. 352.

If the decree of 1858 was not adversary but by consent,

yet as it is based on a valuable consideration, namely, the release of other lands, it cannot be upset to-day.

The decision in *Kapiolani Estate, Limited,* v. *Atcherly* is a binding and conclusive adjudication on the appellee.

If the decision of 1903 is not the law of the case, then the question should be regarded as foreclosed on the ground of *stare decisis. Vail* v. *Arizona,* 207 U. S. 201.

The decisions of Judge Robertson and Chief Justice Allen in 1858, and the decision of the Supreme Court in 1903 having laid down a rule of property, the appellant was entitled to rely upon it in making a purchase of the property, and the Hawaiian court cannot disregard its former opinion.

These decisions had become a rule of property, and the appellee relied on them in paying only $50 for the Kinimaka title in 1897, before the decision of 1903; and the appellant relied on all the decisions, including that of 1903, as declaring a rule of property, in paying $35,000 for the Kalakaua title. *Kuhn* v. *Fairmont Coal Co.,* 215 U. S. 372.

A single decision of the Hawaiian Supreme Court has been held to establish a rule of property. *Kealoha* v. *Castle,* 210 U. S. 148. It is not only a rule of property, but is a rule of this particular property, which the purchaser had a right to rely on, and which is binding on every court until reversed. *Grignon* v. *Astor,* 2 How. 343; *The Propeller Genesee Chief* v. *Fitzhugh,* 12 How. 451, 458; *Henderson* v. *Griffith,* 5 Pet. 151; *Minn. Min. Co.* v. *Nat. Min. Co.,* 3 Wall. 332; *Bibb* v. *Bibb,* 79 Alabama, 437; *Hihn* v. *Curtis,* 31 California, 398; *Schori* v. *Stephens,* 62 Indiana, 441; *Frank* v. *Evansville & I. R. Co.,* 111 Indiana, 132; *Dunklin County* v. *Chouteau,* 120 Missouri, 577; *White* v. *Kyle,* 1 Serg. & R. 15; *Bright* v. *Esterly,* 199 Pa. St. 88; *Henderson* v. *Rost,* 11 La. Ann. 541; *Wilkins* v. *Chicago, St. L. & N. O. Ry. Co.,* 110 Tennessee, 442; *Union Ry. Co.*

v. *Chickasaw Cooperage Co.*, 116 Tennessee, 598; *O'Rourke* v. *Clopper*, 22 Tex. Civ. App. 377.

The decisions of 1858 and 1903 necessarily construed the statutes defining the jurisdiction of the Land Court and of the Supreme Court in 1858 and held that that court had jurisdiction. These decisions became a part of the law, and a subsequent decision could not change the rights of the parties. *Houston & T. C. R. Co.* v. *Texas*, 177 U. S. 66; *State* v. *Comptoir Nat. D'Escompte De Paris*, 51 La. Ann. 1272; 1 Kent's Com. 476; Suth. Stat. Constr., § 319; *Rowan* v. *Reynolds*, 5 How. 134; *Ohio L. Ins. & T. Co.* v. *Debolt*, 16 How. 416; *Los Angeles* v. *Los Angeles City Water Co.*, 177 U. S. 558; *Muhlker* v. *N. Y. & H. R. R. Co.*, 197 U. S. 544.

The rule is the same in regard to a conveyance as to any other contract. Its validity and effect is determined by the laws then in force. *Stephenson* v. *Boody*, 139 Indiana, 66; *Haskett* v. *Maxey*, 134 Indiana, 182; *Levy* v. *Hitsche*, 40 La. Ann. 508; *Fisher* v. *Lott*, 110 S. W. Rep. 822; *Myers* v. *Boyd*, 144 Indiana, 449.

Nor is it material in this case that the change is by judicial decision and not by statute. *Loeb* v. *Trustees of Township*, 179 U. S. 472.

The rule applies where the question involved is the jurisdiction of a court with reference to land. *Herndon* v. *Moore*, 18 S. Car. 355; *Hall* v. *Wells*, 54 Mississippi, 301.

*Mr. Lyle A. Dickey*, with whom *Mr. E. M. Watson*, was on the brief for appellee:

No presumption arises from lapse of time and occupation that in 1858 Richard Armstrong executed a deed of this land to Lalakaua. *Ricard* v. *Williams*, 7 Wheat. 221, 227; *Fletcher* v. *Fuller*, 120 U. S. 534, 550, 592.

The Supreme Court was not bound to follow its own prior decision in *Kapiolani Estate, Limited,* v. *Atcherly*

as *stare decisis*. *Hertz* v. *Woodman*, 218 U. S. 205, 212.
The rule of law of the case did not deprive the Supreme
Court of Hawaii of power to decide that the decree of
1858 was erroneous. A ruling on a demurrer is not such
a final adjudication that the court may not reconsider
its action and enter a contrary order nor decide the same
matter differently when subsequently presented again in
the same case. 31 Cyc. 350; *Hamilton* v. *Marks*, 63 Mis-
souri, 167, 172; *Jungk* v. *Reed*, 12 Utah, 292; *Reeves* v.
*Petty*, 44 Texas, 249, 254; *Meyers* v. *Dittmar*, 47 Texas, 373;
*Norton* v. *Knapp*, 64 Iowa, 112, 115; *Hastings* v. *Fox-
worthy*, 45 Nebraska, 676, 697; *Penn. Co.* v. *Platt*, 47 Oh.
St. 366, 379; *Great Western Telegraph Co.* v. *Burnham*,
162 U. S. 339.

The stipulation entered into between Kapiolani Estate,
Limited, and appellee in the equity suit, to withdraw the
original pleadings and substitute others and reciting that
both parties wished to have the question of *res adjudicata*
settled before proceeding farther, does not bind the parties
here in any way, much less the court.

Appellant as a purchaser from Kapiolani Estate, Lim-
ited, bought *pendente lite* with notice of the pending litiga-
tion and the claims of appellee and so has no right to rely
on any rule of law, there being no final decree. *Mellen v.
Moline Iron Works*, 131 U. S. 352, 370; *Gay* v. *Parpart*,
106 U. S. 679, 696.

The principle of *stare decisis* does not apply to the de-
cree of 1858 for there is no decision. The decree of 1858
lays down no rule of property.

Practice in the courts of a Territory is based upon local
statutes and procedure and the Supreme Court of the
United States is not disposed to review the decision of
the territorial supreme court in such cases. *Sante Fe
County* v. *Coler*, 215 U. S. 296, 307; *Sweeny* v. *Lomme*, 22
Wall. 208, 213; *Mining Co.* v. *Arizona Board*, 206 U. S.
474, 479; *Fox* v. *Haarstick*, 156 U. S. 674, 679; *Maytin* v.

*Vela,* 216 U. S. 598, 602; *Armijo* v. *Armijo,* 181 U. S.
558, 561; *English* v. *Arizona,* 214 U. S. 359, 363.

The original tenure of Hawaii from the time Kameha-
meha first established the monarchy to 1839 was feudal and
a despotism. The King and each overlord under him had
absolute ownership and control of the land and people
under him. Rev. Laws of Hawaii, pp. 1164–66, 1179, Laws
of 1842, of Hawaii, Ch. LIV.

The awards of the Board of Commissioners to quiet
land titles gave fee simple titles for the first time; did
away with feudal tenure and settled forever all claims
to lands arising prior to December 10, 1845. See act to or-
ganize the Executive Departments of the Hawaiian Is-
lands. Part I, Ch. VII, Art. IV.

In the case of 1858 no fraud, actual or constructive, was
pleaded or proved. General allegations of fraud are in-
sufficient. *Greenameyer* v. *Coats,* 212 U. S. 434, 444; *United
States* v. *Arredondo,* 6 Pet. 691, 716.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is an appeal from a decree refusing to the appellant
the 'registration and confirmation of its title to a parcel
of land, described as lot 1 of Land Commission Award
129, Royal Patent 1602. 18 Hawaii, 625. 19 Hawaii, 47.
The appellant claims through mesne conveyances from
David Kalakaua. Kalakaua was adopted by one Kaniu
as her child. She had certain rights, not fully defined,
in the land, and left all her property to Kalakaua by an
oral will in 1844. Her husband, Kinimaka, seems to have
reported this to the King, as required in those days, and
there is evidence that the King disapproved it on account
of Kalakaua's youth. The fact is not found or admitted,
however, and the judge who established the will denied
the power of the King. In 1849 the Land Commission ad-
judged the land to Kinimaki in fee simple. In 1856, on or

shortly before his coming of age, Kalakaua filed a bill in equity in the court of land registration of Oahu, according to the finding of the Supreme Court, to establish a trust against Kinimaka, but this suit was not carried to final decree. In 1858 he proved the will of Kaniu, 2 Hawaii, 82, and thereafter in the same year brought another bill against the widow and guardian of the minor children of Kinimaka, who had died, which ended in a decree that the guardian convey the premises to Kalakaua. This was in 1858. There was no conveyance in accordance with the decree, but Kalakaua occupied the land before and after he became King, conveyed it to his wife, Kapiolani, in 1868, and after his death she occupied it until her death in 1898.

The respondent claims by virtue of a remainder limited in the will of Kinimaka. In 1901 she brought an action of ejectment, whereupon the Kapiolani Estate, Limited, brought a suit in equity to restrain her, on the ground of the foregoing facts. There was a demurrer, which was overruled, 14 Hawaii, 651, and in that stage of the case the appellant bought from the Kapiolani Estate. The cause is still pending, the parties having agreed to try their rights in the present suit.

When the demurrer to the bill of the Kapiolani Estate was overruled the subject mainly discussed was whether the decree of 1858 against the guardian of Kinimaka's children bound the children, they not having been made parties to the bill, as it was admitted that they should have been. But the decision now appealed from, while hinting at a possible difference upon that point, in view of 'the many indications that the decree of 1858 was substantially a consent decree,' placed itself upon a different ground. It held (18 Hawaii, 632) that the appellant, "in seeking to register a title depending upon the unexecuted decree in *Kalakaua* v. *Pai and Armstrong* is, as against the holder of the outstanding legal title, in the same position as a party asking the aid of a court of chan-

cery in executing a former decree, and it is well established that he must take the risk of opening up such decree for reëxamination. *Lawrence Mf'g Co.* v. *Janesville Mills,* 138 U. S. 552." Acting on this rule, as to the application of which in practice we see no sufficient reason for not following the local court, the Supreme Court came to the conclusion that the adjudication of the Land Commission in 1849 bound all interests, and that the decree of 1858 was wrong.

On this point also there is every reason for attributing great weight to the decision of the court on the spot. It concerns the powers of another earlier local tribunal and involves obscure local history concerning a time when the forms of our law were just beginning to superimpose themselves upon the customs of the islanders. Such customs are likely to be distorted when translated into English legal speech. Thus Kaniu is spoken of as the owner of the land; yet a few years before the King would have done with it as he liked, and that the tradition and fact had not wholly disappeared after his grant of the Constitution of 1839 is indicated by his alleged conduct touching the will. The precariousness of titles is emphasized by the laws of 1842. So it is said that Kinimaka was the natural guardian of Kalakaua, we presume on the evidence that Kaniu assented to a suggestion that she had better leave her property in Kinimaka's hands till Kalakaua came of age. But it would be going rather far to apply the refined rules of the English Chancery concerning fiduciary duties to the relations between two Sandwich islanders in 1846, on the strength of such a fact. The real foundation of settled titles seems to have been the establishment of the Land Commission in 1845. *Thurston* v. *Bishop,* 7 Hawaii, 421, 428. When the Supreme Court of Hawaii repeats what it has been saying for many years that the decisions of that Board could not be attacked except by a direct appeal to the Supreme Court provided by law, no imperfect analogy

such as that of patents issued by our Land Department is sufficient to overthrow the tradition, fortified as it is by logic and good sense.

Of course, the later decree establishing the will does not affect the case. That determined only that Kaniu left all her property to Kalakaua, but not that any particular property belonged to the inheritance. The decree overruling the demurrer of the defendant to the bill of the Kapiolani Estate also is relied upon. But as that case has not passed to a final decree, and the appellant bought the land in controversy *pendente lite*, it can stand no better than its vendor the party to the suit. *Mellen* v. *Moline Iron Works*, 131 U. S. 352, 370  If that case instead of this had been prosecuted to final decree there was nothing in its former action to hinder the Supreme Court from adopting th? principle now laid down, even though it thereby should overrule an interlocutory decision previously reached. *King* v. *West Virginia*, 216 U. S. 92, 100, 101.  Other details were mentioned in ? argument, but nothing more seems to us to need remark.

*Decree affirmed.*